PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064

TELEPHONE (212) 373-3000

LLOYD K. GARRISON (1946-1991)
RANDOLPH E. PAUL (1946-1956)
SIMON H. RIFKIND (1950-1995)
LOUIS S. WEISS (1927-1950)
JOHN F. WHARTON (1927-1977)

UNIT 3601, OFFICE TOWER A, BEIJING FORTUNE PLAZA
NO. 7 DONGSANHUAN ZHONGLU
CHAOYANG DISTRICT
BEIJING 100020
PEOPLE'S REPUBLIC OF CHINA
TELEPHONE (86-10) 5828-6300

12TH FLOOR, HONG KONG CLUB BUILDING
3A CHATER ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, U.K.
TELEPHONE (44 20) 7367 1600

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST, SUITE 3100
P.O. BOX 226
TORONTO, ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

2001 K STREET, NW
WASHINGTON, DC 20006-1047
TELEPHONE (202) 223-7300

500 DELAWARE AVENUE, SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

WRITER'S DIRECT DIAL NUMBER

(212) 373-3305

WRITER'S DIRECT FACSIMILE

(212) 492-0305

WRITER'S DIRECT E-MAIL ADDRESS

rrosen@paulweiss.com

MATTHEW W. ABBOTT
ALLAN J. ARFFA
ROBERT A. ATKINS
DAVID J. BALL
JOHN F. BAUGHMAN
LYNN B. BAYARD
DANIEL J. BELLER
CRAIG A. BENSON
MITCHELL L. BERG
MARK S. BERGMAN
BRUCE BIRENBOIM
H. CHRISTOPHER BOEHNING
ANGELO BONVINO
JAMES L. BROCHIN
RICHARD J. BRONSTEIN
DAVID W. BROWN
SUSANNA M. BUERGEL
PATRICK S. CAMPBELL*
JESSICA S. CAREY
JEANETTE K. CHAN
YVONNE Y. F. CHAN
LEWIS R. CLAYTON
JAY COHEN
KELLEY A. CORNISH
CHRISTOPHER J. CUMMINGS
CHARLES E. DAVIDOW
DOUGLAS R. DAVIS
THOMAS V. DE LA BASTIDE III
ARIEL J. DECKELBAUM
ALICE BELISLE EATON
ANDREW J. EHRLICH
GREGORY A. EZRING
LESLIE GORDON FAGEN
MARC FALCONE
ROSS A. FIELDSTON
ANDREW C. FINCH
BRAD J. FINKELSTEIN
BRIAN P. FINNEGAN
ROBERTO FINZI
PETER E. FISCH
ROBERT C. FLEDER
MARTIN FLUMENBAUM
ANDREW J. FOLEY
HARRIS B. FREIDUS
MANUEL S. FREY
ANDREW L. GAINES
KENNETH A. GALLO
MICHAEL E. GERTZMAN
ADAM M. GIVERTZ
SALVATORE GOGLIORMELLA
ROBERT D. GOLDBAUM
NEIL GOLDMAN
ERIC S. GOLDSTEIN
ERIC GOODISON
CHARLES H. GOOGE, JR.
ANDREW G. GORDON
UDI GROFMAN
NICHOLAS GROOMBRIDGE
BRUCE A. GUTENPLAN
GAINES GWATHMEY, III
ALAN S. HALPERIN
JUSTIN G. HAMILL
CLAUDIA HAMMERMAN
GERARD E. HARPER
BRIAN S. HERMANN
ROBERT M. HIRSH
MICHELE HIRSHMAN
MICHAEL S. HONG
DAVID S. HUNTINGTON
LORETTA A. IPPOLITO
JAREN JANGHORBANI
MEREDITH J. KANE
ROBERTA A. KAPLAN
BRAD S. KARP
PATRICK N. KARSNITZ
JOHN C. KENNEDY
ALAN W. KORNBERG
DANIEL J. KRAMER
DAVID K. LAKHDHIR
STEPHEN P. LAMB*
JOHN E. LANGE
DANIEL J. LEFFELL
XIAOYU GREG LIU
JEFFREY D. MARELL
MARCO V. MASOTTI
EDWIN S. MAYNARD
DAVID W. MAYO
ELIZABETH R. McCOLM
MARK F. MENDELSOHN
WILLIAM B. MICHAEL
TOBY S. MYERSON
CATHERINE NYARADY
JANE B. O'BRIEN
ALEX YOUNG K. OH
BRAD R. OKUN
KELLEY D. PARKER
MARC E. PERLMUTTER
VALERIE E. RADWANER
CARL L. REISNER
WALTER G. RICCIARDI
WALTER RIEMAN
RICHARD A. ROSEN
ANDREW N. ROSENBERG
JACQUELINE P. RUBIN
RAPHAEL M. RUSSO
JEFFREY D. SAFERSTEIN
JEFFREY B. SAMUELS
DALE M. SARRO
TERRY E. SCHIMEK
KENNETH M. SCHNEIDER
ROBERT B. SCHUMER
JAMES H. SCHWAB
JOHN M. SCOTT
STEPHEN J. SHIMSHAK
DAVID R. SICULAR
MOSES SILVERMAN
STEVEN SIMKIN
JOSEPH J. SIMONS
MARILYN SOBEL
AUDRA J. SOLOWAY
SCOTT M. SONTAG
TARUN M. STEWART
ERIC ALAN STONE
AIDAN SYNNOTT
ROBYN F. TARNOFSKY
MONICA K. THURMOND
DANIEL J. TOAL
LIZA M. VELAZQUEZ
MARIA T. VULLO
ALEXANDRA M. WALSH*
LAWRENCE G. WEE
THEODORE V. WELLS, JR.
BETH A. WILKINSON
STEVEN J. WILLIAMS
LAWRENCE I. WITDORCHIC
MARK B. WLAZLO
JULIA MASON WOOD
JORDAN E. YARETT
KAYE N. YOSHINO
TONG YU
TRACEY A. ZACCONE
T. ROBERT ZOCHOWSKI, JR.

*NOT ADMITTED TO THE NEW YORK BAR

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ______
DATE FILED: 5-13-2014

RECEIVED
MAY 5 2014
CHAMBERS OF
JUDGE MARRERO

May 5, 2014

**By Hand**

The Honorable Victor Marrero
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

*Globis Capital Partners, L.P., et. al.* v. *The Cash Store Financial Services Inc., et al.*,
No. 13 Civ. 3385 (VM)

Dear Judge Marrero:

We represent The Cash Store Financial Services Inc. ("Cash Store"), Gordon Reykdal, Craig Warnock, and Michael Shaw in the above-referenced consolidated securities class action.

As the Court may recall, Co-Lead Counsel for the Lead Plaintiffs wrote a letter on April 1, 2014 to inform Your Honor that the parties to the above-referenced action and related securities class actions in Canada had reached a proposed global resolution. The letter briefly explained the terms of the proposed settlement and stated that counsel for the parties were in the process of preparing the formal stipulation of settlement and expected to file a motion for preliminary approval by May 9, 2014.

On April 14, 2014, Cash Store filed an application in the Ontario Superior Court of Justice (Commercial List) seeking bankruptcy protection under the *Companies' Creditors Arrangement Act*. We do not represent Cash Store in the bankruptcy proceedings.

On April 15, 2014, Justice Morawetz granted an order that "no proceeding or enforcement process in any court or tribunal… shall be commenced or continued against or in respect of [Cash Store]… except with the written consent of [Cash Store] and the Monitor, or with leave of this Court." Amended and Restated Initial Order, ¶16. He also granted a stay of proceedings "against any of the former, current or future directors or officers of [Cash Store] with respect to any claim… that relates to any obligations of [Cash Store] whereby the directors or officers are alleged under any law to be liable in their capacity as directors or officers for the payment or performance of such obligations." Id. at ¶21.

In light of this development, we are attempting to ascertain whether, and on what schedule, it will be possible to move forward with the proposed settlement on the previously agreed upon terms. In particular, we are in discussions with counsel to the Chief Restructuring Officer of Cash Store to determine whether, and when, it may be possible to seek relief from the stay to allow for the implementation of the proposed settlement.

We will keep Your Honor apprised of any developments and provide a further update as soon as we are in a position to do so.

Respectfully submitted,

Richard A. Rosen

PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019

*Counsel for Defendants The Cash Store Financial Services Inc., Gordon Reykdal, Craig Warnock, and Michael Shaw*

Enclosure

cc: Thomas Rohback, Esq. (by email)
David S. Hoffner, Esq. (by email)
Ira Press, Esq. (by email)

The Clerk of Court is directed to enter into the public record of this action the letter above submitted to the Court by Cash Store defendants.

**SO ORDERED.**

5-13-14
DATE

VICTOR MARRERO, U.S.D.J.

Court File No. CV-14-10518-00CL

**ONTARIO**
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

| | | |
|---|---|---|
| THE HONOURABLE REGIONAL | ) | TUESDAY, THE 15TH |
| | ) | |
| SENIOR JUSTICE MORAWETZ | ) | DAY OF APRIL, 2014 |

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF THE CASH STORE FINANCIAL SERVICES INC., THE CASH STORE INC., TCS CASH STORE INC., INSTALOANS INC., 7252331 CANADA INC., 5515433 MANITOBA INC., 1693926 ALBERTA LTD. DOING BUSINESS AS "THE TITLE STORE". (each one and all of the above, collectively, the "**Applicants**")

**AMENDED AND RESTATED INITIAL ORDER**

THIS APPLICATION, made by the Applicants, pursuant to the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended (the "**CCAA**") was heard this day at 330 University Avenue, Toronto, Ontario.

ON READING the affidavit of Steven Carlstrom sworn April 14, 2014 and the Exhibits thereto (the "**Carlstrom Affidavit**") and the affidavits of Patrick Riesterer and the Exhibits thereto, and on being advised that the secured creditors who are likely to be affected by the charges created herein were given notice, and on hearing the submissions of counsel for the Special Committee, the DIP Lenders (as defined in the Term Sheet (as defined herein)), the *ad hoc* committee of holders of the Applicants' 11 ½% senior secured notes (the "**Ad Hoc Committee**"), FTI Consulting Canada Inc. ("**FTI**") in its capacity as Monitor (the "**Monitor**") and such other counsel present, no other person appearing although duly served as appears from the affidavit of service of Karin Sachar sworn April 14, 2014 and on reading the Pre-Filing

Report of the Monitor dated April 14, 2014, the consent of FTI to act as the Monitor and the First Report of the Monitor dated April 15, 2014,

**SERVICE**

1. THIS COURT ORDERS that the time for service of the Notice of Application and the Application Record is hereby abridged and validated so that this Application is properly returnable today and hereby dispenses with further service thereof.

**APPLICATION**

2. THIS COURT ORDERS AND DECLARES that the Applicants are companies to which the CCAA applies.

**PLAN OF ARRANGEMENT**

3. THIS COURT ORDERS that the Applicants shall have the authority to file and may, subject to further order of this Court, file with this Court a plan of compromise or arrangement (hereinafter referred to as the "**Plan**").

**POSSESSION OF PROPERTY AND OPERATIONS**

4. THIS COURT ORDERS that the Applicants shall remain in possession and control of their current and future assets, undertakings and properties of every nature and kind whatsoever, and wherever situate including all proceeds thereof, and including for greater certainty all cash held in the Applicants' accounts (the "**Property**"), subject to paragraphs 30 to 35. The Applicants shall continue to carry on business and use the Property, the Filing Date Cash (as defined below), and the TPL Funds (as defined in the Carlstrom Affidavit) in a manner consistent with the preservation of its business, including the making of brokered loans pursuant to the Applicants' past practices as modified by paragraphs 30 to 35 (the "**Business**"), and Property. The Applicants are authorized and empowered to continue to retain and employ the employees, consultants, agents, experts, accountants, counsel and such other persons (collectively "**Assistants**") currently retained or employed by it, with liberty to retain such further Assistants as it deems reasonably necessary or desirable in the ordinary course of business or for the carrying out of the terms of this Order.

5. THIS COURT ORDERS that the Applicants shall be entitled to continue to utilize the central cash management system currently in place as described in the Carlstrom Affidavit or, with the consent of the Monitor and the DIP Lenders, replace it with another substantially similar central cash management system (the "**Cash Management System**") and that any present or future bank providing the Cash Management System shall not be under any obligation whatsoever to inquire into the propriety, validity or legality of any transfer, payment, collection or other action taken under the Cash Management System, or as to the use or application by the Applicants of funds transferred, paid, collected or otherwise dealt with in the Cash Management System, shall be entitled to provide the Cash Management System without any liability in respect thereof to any Person (as hereinafter defined) other than the Applicants, pursuant to the terms of the documentation applicable to the Cash Management System, and shall be, in its capacity as provider of the Cash Management System, an unaffected creditor under the Plan with regard to any claims or expenses it may suffer or incur in connection with the provision of the Cash Management System.

6. THIS COURT ORDERS that the Applicants shall be entitled but not required to pay the following expenses whether incurred prior to or after this Order:

(a) all outstanding and future wages, salaries, employee and pension benefits, vacation pay (excluding any change of control or similar termination payments without the consent of the DIP Lenders) and reasonable employee expenses (the reasonableness of which will be determined by the CRO (as defined herein)) payable on or after the date of this Order, in each case incurred in the ordinary course of business and consistent with existing compensation policies and arrangements; and

(b) subject to the terms and conditions of the debtor-in-possession loan facility (the "**DIP Facility**") as provided for in the Term Sheet, including the applicable terms therein that refer to the cash flow projections approved by the DIP Lenders pursuant to the terms and conditions of the DIP Facility (the "**Cash Flow Projections**"), the reasonable fees and disbursements of any Assistants retained or employed by the Applicants in respect of these proceedings, at their standard rates and charges.

7. THIS COURT ORDERS that, subject to the terms and conditions of and availability under the DIP Facility and the Term Sheet, including the applicable terms therein that refer to the

Cash Flow Projections, and except as otherwise provided to the contrary herein, the Applicants shall be entitled but not required to pay all reasonable expenses incurred by the Applicants in carrying on the Business in the ordinary course after the date of this Order, and in carrying out the provisions of this Order, which expenses shall include, without limitation:

(a) all expenses and capital expenditures reasonably necessary for the preservation of the Property or the Business including, without limitation, payments on account of insurance (including directors and officers insurance), maintenance and security services;

(b) payment for goods or services actually supplied to the Applicants following the date of this Order; and

(c) payments to critical vendors with the consent of the Monitor.

8. THIS COURT ORDERS that the Applicants shall remit, in accordance with legal requirements, or pay:

(a) any statutory deemed trust amounts in favour of the Crown in right of Canada or of any Province thereof or any other taxation authority which are required to be deducted from employees' wages, including, without limitation, amounts in respect of (i) employment insurance, (ii) Canada Pension Plan, (iii) Quebec Pension Plan, and (iv) income taxes;

(b) all goods and services or other applicable sales taxes (collectively, "**Sales Taxes**") required to be remitted by the Applicants in connection with the sale of goods and services by the Applicants, but only where such Sales Taxes are accrued or collected after the date of this Order, or where such Sales Taxes were accrued or collected prior to the date of this Order but not required to be remitted until on or after the date of this Order, and

(c) any amount payable to the Crown in right of Canada or of any Province thereof or any political subdivision thereof or any other taxation authority in respect of municipal realty, municipal business or other taxes, assessments or levies of any nature or kind which are entitled at law to be paid in priority to claims of secured

creditors and which are attributable to or in respect of the carrying on of the Business by the Applicants.

9. THIS COURT ORDERS that until a real property lease is disclaimed in accordance with the CCAA, the Applicants shall pay all amounts constituting rent or payable as rent under real property leases (including, for greater certainty, common area maintenance charges, utilities and realty taxes and any other amounts payable to the landlord under the lease) or as otherwise may be negotiated between the Applicants and the landlord from time to time ("**Rent**"), for the period commencing from and including the date of this Order, twice-monthly in equal payments on the first and fifteenth day of each month, in advance (but not in arrears). On the date of the first of such payments, any Rent relating to the period commencing from and including the date of this Order shall also be paid.

10. THIS COURT ORDERS that, except as specifically permitted herein, the Applicants are hereby directed, until further Order of this Court: (a) to make no payments of principal, interest thereon or otherwise on account of amounts owing by the Applicants to any of their creditors as of this date, other than interest payments under the Credit Agreement (as defined in the Carlstrom Affidavit) and the retention payments to TPLs (as described below), both as set out in the Cash Flow Projections; (b) to grant no security interests, trust, liens, charges or encumbrances upon or in respect of any of their Property; and (c) to not grant credit or incur liabilities except in the ordinary course of the Business.

**RESTRUCTURING**

11. THIS COURT ORDERS that the Applicants shall, subject to such requirements as are imposed by the CCAA and such covenants as may be contained in the term sheet governing the DIP Facility (the "**Term Sheet**") and the Definitive Documents (as hereinafter defined), have the right to:

(a) permanently or temporarily cease, downsize or shut down any of their business or operations and to dispose of redundant or non-material assets not exceeding $25,000 in any one transaction or $75,000 in the aggregate;

(b) terminate the employment of such of their employees or temporarily lay off such of their employees as they deem appropriate on such terms as may be agreed upon

between the applicable employer and such employee or, failing such agreement, to deal with the consequences thereof in accordance with applicable law;

(c) pursue all avenues of refinancing of their Business or Property, in whole or part, subject to prior approval of this Court being obtained before any material refinancing; and

(d) in consultation with the Monitor, solicit non-binding letters of intent for the sale of the Business by May 15, 2014 (or such later date as the Applicants, with the consent of the Monitor, shall determine) through Rothschild Inc. ("**Rothschild**"), in furtherance of the mergers and acquisitions process described in the Carlstrom Affidavit,

all of the foregoing to permit the Applicants to proceed with an orderly restructuring of the Business (the "**Restructuring**").

12. THIS COURT ORDERS that the Applicants shall provide each of the relevant landlords with notice of the Applicants' intention to remove any fixtures from any leased premises at least seven (7) days prior to the date of the intended removal. The relevant landlord shall be entitled to have a representative present in the leased premises to observe such removal and, if the landlord disputes the Applicants' entitlement to remove any such fixture under the provisions of the lease, such fixture shall remain on the premises and shall be dealt with as agreed between any applicable secured creditors, such landlord and the Applicant, or by further Order of this Court upon application by the Applicants on at least two (2) days notice to such landlord and any such secured creditors. If the Applicants disclaim the lease governing such leased premises in accordance with Section 32 of the CCAA, they shall not be required to pay Rent under such lease pending resolution of any such dispute (other than Rent payable for the notice period provided for in Section 32(5) of the CCAA), and the disclaimer of the lease shall be without prejudice to the Applicants' claim to the fixtures in dispute.

13. THIS COURT ORDERS that if a notice of disclaimer is delivered pursuant to Section 32 of the CCAA, then (a) during the notice period prior to the effective time of the disclaimer, the landlord may show the affected leased premises to prospective tenants during normal business hours, on giving the Applicants and the Monitor 24 hours' prior written notice, and (b) at the

effective time of the disclaimer, the relevant landlord shall be entitled to take possession of any such leased premises without waiver of or prejudice to any claims or rights such landlord may have against the Applicants in respect of such lease or leased premises, provided that nothing herein shall relieve such landlord of its obligation to mitigate any damages claimed in connection therewith.

**FINANCIAL ADVISORS**

14. THIS COURT ORDERS that the engagement of (i) Rothschild as financial advisor pursuant to the engagement letter dated February 20, 2014 and (ii) Conway MacKenzie ("**Conway**") as financial advisor pursuant to the engagement letter dated January 29, 2014 are hereby approved.

15. THIS COURT ORDERS that Rothschild is authorized to continue the mergers and acquisitions process as described in the Carlstrom Affidavit, in consultation with the Monitor.

**NO PROCEEDINGS AGAINST THE APPLICANTS OR THE PROPERTY**

16. THIS COURT ORDERS that until and including May 14, 2014, or such later date as this Court may order (the "**Stay Period**"), no proceeding or enforcement process in any court or tribunal (each, a "**Proceeding**") shall be commenced or continued against or in respect of the Applicants, the CRO, or the Monitor, or affecting the Business or the Property, except with the written consent of the Applicants and the Monitor, or with leave of this Court, and any and all Proceedings currently under way against or in respect of the Applicants or affecting the Business or the Property are hereby stayed and suspended pending further Order of this Court.

**NO EXERCISE OF RIGHTS OR REMEDIES**

17. THIS COURT ORDERS that during the Stay Period, all rights and remedies of any individual, firm, corporation, governmental body or agency, or any other entities (all of the foregoing, collectively being "**Persons**" and each being a "**Person**") against or in respect of the Applicants, the CRO, or the Monitor, or affecting the Business or the Property, are hereby stayed and suspended except with the written consent of the Applicants and the Monitor, or leave of this Court, provided that nothing in this Order shall (i) empower the Applicants to carry on any business which the Applicants are not lawfully entitled to carry on, (ii) affect such investigations,

actions, suits or proceedings by a regulatory body as are permitted by Section 11.1 of the CCAA, (iii) prevent the filing of any registration to preserve or perfect a security interest, or (iv) prevent the registration of a claim for lien.

**NO INTERFERENCE WITH RIGHTS**

18. THIS COURT ORDERS that during the Stay Period, no Person shall discontinue, fail to honour, alter, interfere with, repudiate, terminate or cease to perform any right, renewal right, contract, agreement, licence or permit in favour of or held by the Applicants, except with the written consent of the Applicants and the Monitor, or leave of this Court.

**CONTINUATION OF SERVICES**

19. THIS COURT ORDERS that during the Stay Period, all Persons having oral or written agreements with the Applicants or statutory or regulatory mandates for the supply of goods and/or services, including without limitation all computer software, communication and other data services, centralized banking services, payroll services, insurance, transportation services, utility or other services to the Business or the Applicants, are hereby restrained until further Order of this Court from discontinuing, altering, interfering with or terminating the supply of such goods or services as may be required by the Applicants, and that the Applicants shall be entitled to the continued use of their current premises, telephone numbers, facsimile numbers, internet addresses and domain names, provided in each case that the normal prices or charges for all such goods or services received after the date of this Order are paid by the Applicants in accordance with normal payment practices of the Applicants or such other practices as may be agreed upon by the supplier or service provider and each of the Applicants and the Monitor, or as may be ordered by this Court.

**NON-DEROGATION OF RIGHTS**

20. THIS COURT ORDERS that, notwithstanding anything else in this Order, no Person shall be prohibited from requiring immediate payment for goods, services, use of lease or licensed property or other valuable consideration provided on or after the date of this Order, nor shall any Person be under any obligation on or after the date of this Order to advance or re-advance any monies or otherwise extend any credit to the Applicants. Nothing in this Order shall derogate from the rights conferred and obligations imposed by the CCAA. For greater

certainty, nothing in this Order shall prejudice the rights of the TPLs under their broker agreements (the "**Broker Agreements**") with the Applicants, or their right to assert any arguments in this proceeding in relation to the matters contemplated hereby.

**PROCEEDINGS AGAINST CRO, DIRECTORS AND OFFICERS**

21. THIS COURT ORDERS that during the Stay Period, and except as permitted by subsection 11.03(2) of the CCAA, no Proceeding may be commenced or continued against any of the former, current or future directors or officers of the Applicants with respect to any claim against the directors or officers that arose before the date hereof and that relates to any obligations of the Applicants whereby the directors or officers are alleged under any law to be liable in their capacity as directors or officers for the payment or performance of such obligations, until a compromise or arrangement in respect of the Applicants, if one is filed, is sanctioned by this Court or is refused by the creditors of the Applicants or this Court.

22. THIS COURT ORDERS that no member of the Special Committee nor the CRO shall have any liability with respect to any losses, claims, damages or liabilities, of any nature or kind, to any Person from and after the date of this Order except to the extent such losses, claims, damages or liabilities result from the gross negligence or wilful misconduct on the part of such member of the Special Committee or the CRO, as the case may be.

23. THIS COURT ORDERS that BlueTree Advisors Inc. be and is hereby appointed Chief Restructuring Officer of the Applicants ("**CRO**"). The CRO shall have the authority to direct the operations and management of the Applicants and the Restructuring, and the officers (including the executive management team of the Applicants) of the Applicants shall report to the CRO. For greater certainty, the CRO shall be entitled to exercise any powers of the Applicants set out herein, to the exclusion of any other Person (including any board member of the Applicants). The CRO shall provide timely updates to the Monitor in respect of its activities.

24. THIS COURT ORDERS that the CRO shall not be or be deemed to be a director, officer or employee of any of the Applicants.

25. THIS COURT ORDERS that (i) any indemnification obligations of the Applicants in favour of the CRO and (ii) the payment obligations of the Applicants to the CRO shall be entitled to the benefit of and shall form part of the Administration Charge set out herein.

26. THIS COURT ORDERS that any claims of the CRO shall be treated as unaffected in any plan of compromise and arrangement filed by the Applicants under the CCAA, any proposal filed by the Applicants under the *Bankruptcy and Insolvency Act* of Canada (the "BIA") or any other restructuring.

**DIRECTORS' AND OFFICERS' INDEMNIFICATION AND CHARGE**

27. THIS COURT ORDERS that the Applicants shall indemnify their directors and officers against obligations and liabilities that they may incur as directors or officers of the Applicants after the commencement of the within proceedings, except to the extent that, with respect to any officer or director, the obligation or liability was incurred as a result of the director's or officer's gross negligence or wilful misconduct.

28. THIS COURT ORDERS that the directors and officers of the Applicants shall be entitled to the benefit of and are hereby granted a charge (the "**Directors' Charge**") on the Property, which charge shall not exceed an aggregate amount of $2,500,000 as security for the indemnity provided in paragraph 27 of this Order. The Directors' Charge shall have the priority set out in paragraphs 53 and 55 herein.

29. THIS COURT ORDERS that, notwithstanding any language in any applicable insurance policy to the contrary, (a) no insurer shall be entitled to be subrogated to or claim the benefit of the Directors' Charge, and (b) the Applicants' directors and officers shall only be entitled to the benefit of the Directors' Charge to the extent that they do not have coverage under any directors' and officers' insurance policy, or to the extent that such coverage is insufficient to pay amounts indemnified in accordance with paragraph 27 of this Order.

**THE THIRD PARTY LENDERS**

30. THE COURT ORDERS that the TPLs (as defined in the Carlstrom Affidavit) shall be entitled to the benefit of and are hereby granted a charge (the "**TPL Charge**") on the Property, which charge shall equal the amount of the Applicants' cash-on-hand as of the effective time of the Initial Order granted in these proceedings (the "**Filing Date Cash**"). The TPLs shall only be entitled to the benefit of the TPL Charge in the event that this Court determines that the TPLs were entitled to the Filing Date Cash in priority to any other Person, or that the Filing Date Cash was not Property as of the effective time of the Initial Order granted in these proceedings.

Notwithstanding the granting of the TPL Charge, subject to the reservation of rights in paragraph 20, above, nothing in this order shall grant the TPLs any new, additional, or greater rights to the Filing Date Cash than the TPLs would have had immediately prior to the effective time of the Initial Order granted in these proceedings.

31. THIS COURT ORDERS and directs that the Applicants shall keep records of all receipts and disbursements in connection with the TPL brokered loans (the "**TPL Brokered Loans**") and any amounts received by the Applicants in respect of same subsequent to the effective time of the Initial Order granted in these proceedings (the "**TPL Post-Filing Receipts**"), separate and apart from the Applicants' direct loans, and shall report to the TPLs with respect to the TPL Post-Filing Receipts in a manner and on a basis as agreed upon by the relevant TPL, the Applicants and the Monitor, or as subsequently ordered by this Court. The Applicants shall provide information reasonably requested by a TPL in respect of its TPL Brokered Loans and funds paid to the Applicants by the TPLs, in each case whether before or after the effective time of the Initial Order granted in these proceedings and shall give the TPLs or their agents reasonable access to their records for the purpose of preparing an accounting of such TPL Brokered Loan and funds and monitoring the Applicants' compliance with the Broker Agreements. In both cases the reasonableness of such requests shall be determined by the CRO and the Monitor.

32. THIS COURT ORDERS that the Applicants shall continue to receive amounts in connection with the repayment of TPL Brokered Loans and shall be entitled to use such TPL Post-Filing Receipts for the sole purpose of brokering new TPL Brokered Loans. The Applicants shall be entitled to continue their practice of depositing repayments of TPL Brokered Loans into the Applicants' general bank accounts; however, no party (including the Applicants, TPLs and any lender, including a DIP lender), shall be entitled to rely on such treatment of TPL Post-Filing Receipts in connection with the determination of the relevant TPL's entitlement to, or ownership of, any TPL Post-Filing Receipts, the TPL Net Receipt Minimum Balance (as defined below) or any TPL Brokered Loans advanced therefrom. Moreover, the treatment of the TPL Post-Filing Receipts set out in this Order shall be without prejudice to any argument by a TPL that but for the CCAA Proceedings such TPL would have required the Applicants to physically segregate such funds.

33. THIS COURT ORDERS that the Applicants shall maintain a minimum cash balance in an amount equal to the aggregate amount of any TPL Post-Filing Receipts less the aggregate amount of any Post-Filing TPL Receipts subsequently redeployed, from time to time, as new TPL Brokered Loans (the "**TPL Net Receipt Minimum Balance**").

34. THIS COURT ORDERS that to the extent a TPL claims a priority entitlement to the TPL Brokered Loans in existence at or after the effective time of the Initial Order granted in these proceedings and/or to the Post-Filing TPL Receipts, the TPL's entitlement thereto shall be determined based on the legal rights as they existed immediately prior to the effective time of the Initial Order granted in these proceedings, including that each TPL's entitlement to any portion of the TPL Net Receipts Minimum Balance will be determined by reference to such TPL's entitlement to and interest in the TPL Brokered Loans giving rise to such portion of Post-Filing TPL Receipts. To the extent a TPL is able to establish a trust, ownership or other proprietary interest in any Post-Filing TPL Receipts and/or any TPL Brokered Loans such that they do not form part of the Property of the Applicants then, for greater certainty, the Charges (defined below) shall not apply to such TPL's portion of the TPL Net Receipt Minimum Balance or such TPL's then-existing TPL Brokered Loans to the extent of such established entitlement. Notwithstanding the foregoing, nothing in this paragraph shall affect the rights of any TPL arising from or related to any registration to preserve or protect a security interest pursuant to paragraph 17.

35. THIS COURT ORDERS the Applicants shall continue to ensure that TPLs receive a return of approximately 17.5% per year (or such lesser amount as may be agreed to) with respect to TPL Brokered Loans that are repaid and available for redeployment from and after the Initial Order date and any capital protection (as described in the Carlstrom Affidavit).

## APPOINTMENT OF MONITOR

36. THIS COURT ORDERS that FTI is hereby appointed pursuant to the CCAA as the Monitor, an officer of this Court, to monitor the business and financial affairs of the Applicants with the powers and obligations set out in the CCAA or set forth herein and that the Applicants and their shareholders, officers, directors, and Assistants shall advise the Monitor of all material steps taken by the Applicants pursuant to this Order, and shall co-operate fully with the Monitor in the exercise of its powers and discharge of its obligations and provide the Monitor with the

assistance that is necessary to enable the Monitor to adequately carry out the Monitor's functions.

37. THIS COURT ORDERS that the Monitor, in addition to its prescribed rights and obligations under the CCAA, is hereby directed and empowered to:

(a) monitor the Applicants' receipts and disbursements;

(b) report to this Court at such times and intervals as the Monitor may deem appropriate with respect to matters relating to the Property, the Business, and such other matters as may be relevant to the proceedings herein;

(c) assist the Applicants, to the extent required by the Applicants, in their dissemination, to the DIP Lenders and their counsel at the times required under the DIP Facility, of financial and other information as agreed to between the Applicants and the DIP Lenders which may be used in these proceedings, including reporting on a basis as agreed with the DIP Lenders under the DIP Facility;

(d) advise the Applicants in their preparation of the Applicants' cash flow statements and reporting required by the DIP Lenders, which information shall be reviewed with the Monitor and delivered to the DIP Lenders and their counsel on a periodic basis, as provided under the DIP Facility;

(e) advise the Applicants in their development of the Plan and any amendments to the Plan;

(f) assist the Applicants, to the extent required by the Applicants, with the holding and administering of creditors' or shareholders' meetings for voting on the Plan;

(g) have full and complete access to the Property, including the premises, books, records, data, including data in electronic form, and other financial documents of the Applicants, to the extent that is necessary to adequately assess the Applicants' business and financial affairs or to perform its duties arising under this Order;

(h) assist the Applicants, to the extent required by the Applicants, with any and all restructuring activities and/or any sale of the Property and the Business or any part thereof;

(i) assist Rothschild with respect to the mergers and acquisitions process of the Applicants' Business;

(j) be at liberty to engage independent legal counsel or such other persons as the Monitor deems necessary or advisable respecting the exercise of its powers and performance of its obligations under this Order; and

(k) perform such other duties as are required by this Order or by this Court from time to time.

38. THIS COURT ORDERS that the Monitor shall not take possession of the Property and shall take no part whatsoever in the management or supervision of the management of the Business and shall not, by fulfilling its obligations hereunder, be deemed to have taken or maintained possession or control of the Business or Property, or any part thereof.

39. THIS COURT ORDERS that nothing herein contained shall require the Monitor to occupy or to take control, care, charge, possession or management (separately and/or collectively, "**Possession**") of any of the Property that might be environmentally contaminated, might be a pollutant or a contaminant, or might cause or contribute to a spill, discharge, release or deposit of a substance contrary to any federal, provincial or other law respecting the protection, conservation, enhancement, remediation or rehabilitation of the environment or relating to the disposal of waste or other contamination including, without limitation, the *Canadian Environmental Protection Act*, the Ontario *Environmental Protection Act*, the *Ontario Water Resources Act*, or the Ontario *Occupational Health and Safety Act* and regulations thereunder (the "**Environmental Legislation**"), provided however that nothing herein shall exempt the Monitor from any duty to report or make disclosure imposed by applicable Environmental Legislation. The Monitor shall not, as a result of this Order or anything done in pursuance of the Monitor's duties and powers under this Order, be deemed to be in Possession of any of the Property within the meaning of any Environmental Legislation, unless it is actually in possession.

40. THIS COURT ORDERS that the Monitor shall provide any creditor of the Applicants and the DIP Lenders with information provided by the Applicants in response to reasonable requests for information made in writing by such creditor addressed to the Monitor. The Monitor shall not have any responsibility or liability with respect to the information disseminated by it pursuant to this paragraph. In the case of information that the Monitor has been advised by the Applicants is confidential, the Monitor shall not provide such information to creditors unless otherwise directed by this Court or on such terms as the Monitor and the Applicants may agree.

41. THIS COURT ORDERS that, in addition to the rights and protections afforded the Monitor under the CCAA or as an officer of this Court, the Monitor shall incur no liability or obligation as a result of its appointment or the carrying out of the provisions of this Order, save and except for any gross negligence or wilful misconduct on its part. Nothing in this Order shall derogate from the protections afforded the Monitor by the CCAA or any applicable legislation.

42. THIS COURT ORDERS that, subject to the terms and conditions of and availability under the DIP Facility and the Term Sheet, including the applicable terms therein that refer to the Cash Flow Projections, the CRO, the Monitor, counsel to the Monitor, counsel to the Applicants, counsel to the Special Committee and the CRO, Rothschild, Conway, Michele McCarthy (the "**CCRO**") and counsel to the DIP Lenders and Coliseum Capital Management, LLC (in its capacity as Agent under the DIP Facility (the "**Agent**")) shall be paid their reasonable fees and disbursements, in each case at their standard rates and charges, by the Applicants as part of the costs of these proceedings. The Applicants are hereby authorized and directed to pay the accounts of the CRO, the Monitor, counsel to the Monitor, counsel to the Applicants, counsel to the Special Committee and the CRO, Rothschild, Conway, and counsel to the DIP Lenders and Agent on a weekly basis, or on such basis as otherwise agreed by the Applicants and the applicable payee. The Applicants shall also be entitled to pay the reasonable fees and disbursements of Goodmans LLP, Houlihan Capital LLC and McMillan LLP.

43. THIS COURT ORDERS that the Monitor and its legal counsel shall pass their accounts from time to time, and for this purpose the accounts of the Monitor and its legal counsel are hereby referred to a judge of the Commercial List of the Ontario Superior Court of Justice.

44. THIS COURT ORDERS that the CRO, the Monitor, counsel to the Monitor, the Applicants' counsel, the Special Committee's and CRO's counsel, Rothschild, Conway, the

CCRO, counsel to the DIP Lenders and Agent, Goodmans LLP and Houlihan Capital LLC shall be entitled to the benefit of and are hereby granted a charge (the "**Administration Charge**") on the Property, which charge shall not exceed an aggregate amount of $1,500,000, as security for their professional fees and disbursements incurred at their standard rates and charges, both before and after the making of this Order in respect of these proceedings. The Administration Charge shall have the priority set out in paragraphs 53 and 55 hereof.

**DIP FINANCING**

45. THIS COURT ORDERS that the Applicants are hereby authorized and empowered to obtain and borrow under the DIP Facility from the DIP Lenders in order to finance the Applicants' working capital requirements, other general corporate purposes and capital expenditures and allow them to make such other payments as permitted under this Order and the Term Sheet, provided that borrowings under the DIP Facility shall not exceed the amounts prescribed in the Term Sheet.

46. THIS COURT ORDERS that the DIP Facility shall be on the terms and subject to the conditions set forth in the Term Sheet.

47. THIS COURT ORDERS that the DIP Facility and the Term Sheet be and are hereby approved and the Applicants are hereby authorized and directed to execute and deliver the Term Sheet.

48. THIS COURT ORDERS that the Applicants are hereby authorized and empowered to execute and deliver such credit agreements, mortgages, charges, hypothecs and security documents, guarantees and other definitive documents (collectively, the "**Definitive Documents**"), as are contemplated by the Term Sheet or as may be reasonably required by the DIP Lenders pursuant to the terms thereof, and the Applicants are hereby authorized and directed to pay and perform all of their indebtedness, interest, fees, liabilities and obligations to the DIP Lenders under and pursuant to the Term Sheet and Definitive Documents as and when the same become due and are to be performed, notwithstanding any other provision of this Order.

49. THIS COURT ORDERS that the DIP Lenders shall be entitled to the benefit of and are hereby granted a charge (the "**DIP Priority Charge**") on the Property as security for any and all obligations of the Applicants under the DIP Facility, the Term Sheet and the Definitive

Documents (including on account of principal, interest, fees, expenses and other liabilities) (the aggregate of all such obligations being the "**DIP Obligations**"), which DIP Priority Charge shall be in the aggregate amount of the DIP Obligations outstanding at any given time. The DIP Priority Charge shall not secure an obligation that exists before this Order is made. The DIP Priority Charge shall have the priority set out in paragraphs 53 and 55 hereof.

50. THIS COURT ORDERS that, notwithstanding any other provision of this Order:

(a) the DIP Lenders may take such steps from time to time as they may deem necessary or appropriate to file, register, record or perfect the DIP Priority Charge or any of the Definitive Documents;

(b) upon the occurrence of an event of default under the Term Sheet, the other Definitive Documents or the DIP Priority Charge, (A) the DIP Lenders may cease making advances to the Applicants, (B) the DIP Lenders may (i) set off and/or consolidate any amounts owing by the DIP Lenders to the Applicants against the obligations of the Applicants to the DIP Lenders under the Term Sheet, the Definitive Documents or the DIP Priority Charge, and make demand, accelerate payment, and (ii) following an Order of the Court, granted on at least two (2) days' notice to the Applicants and the Monitor, exercise any and all of their respective rights and remedies against the Applicants or the Property under or pursuant to the Term Sheet, the other Definitive Documents, the DIP Priority Charge, or the *Personal Property Security Act* of Manitoba, *Personal Property Security Act* of Alberta, *Personal Property Security Act* of Ontario or any other legislation of similar effect applicable, including without limitation, to apply to this Court for the appointment of a receiver, receiver and manager or interim receiver, or for a bankruptcy order against the Applicants and for the appointment of a trustee in bankruptcy of the Applicants; and

(c) the foregoing rights and remedies of the DIP Lenders shall be enforceable against any trustee in bankruptcy, interim receiver, receiver or receiver and manager of the Applicants or the Property.

51. THIS COURT ORDERS AND DECLARES that the DIP Lenders shall be treated as unaffected in any plan of arrangement or compromise filed by the Applicants under the CCAA,

or any proposal filed by the Applicants under the BIA ("**Proposal**"), with respect to any advances made under the DIP Facility, the Term Sheet and the Definitive Documents.

52. THIS COURT ORDERS that the obligations under the DIP Facility, Term Sheet and the Definitive Documents shall be treated as unaffected by any Plan or Proposal and the Applicants shall not file a Plan in these Proceedings or any Proposal that does not provide for the indefeasible payment in full in cash of the obligations outstanding in respect of the DIP Facility, the Term Sheet and the Definitive Documents as a pre-condition to the implementation of any such Plan or Proposal.

**VALIDITY AND PRIORITY OF CHARGES CREATED BY THIS ORDER**

53. THIS COURT ORDERS that the priorities of the Directors' Charge, the Administration Charge, the DIP Priority Charge, and the TPL Charge as among them, shall be as follows:

First – Administration Charge;

Second – Directors' Charge (up to a maximum of $1,250,000);

Third – DIP Priority Charge and the TPL Charge on a *pari passu* basis;

Fourth – the liens securing obligations under the Credit Agreement;

Fifth – Directors' Charge (for the remaining amount of $1,250,000) (the "**Directors' Subordinated Charge**").

54. THIS COURT ORDERS that the filing, registration or perfection of the Directors' Charge, the Administration Charge, the DIP Priority Charge or the TPL Charge (collectively, the "**Charges**") shall not be required, and that the Charges shall be valid and enforceable for all purposes, including as against any right, title or interest filed, registered, recorded or perfected subsequent to the Charges coming into existence, notwithstanding any such failure to file, register, record or perfect.

55. THIS COURT ORDERS that each of the Directors' Charge, the Administration Charge, the DIP Priority Charge, and the TPL Charge (all as constituted and defined herein) shall constitute a charge on the Property and such Charges shall rank in priority to all other security

interests, trusts, liens, charges and encumbrances, claims of secured creditors, statutory or otherwise (collectively, "**Encumbrances**") in favour of any Person, except that the Directors' Subordinated Charge shall rank behind the liens securing obligations under the Credit Agreement.

56. THIS COURT ORDERS that except as otherwise expressly provided for herein, or as may be approved by this Court, the Applicants shall not grant any Encumbrances over any Property that rank in priority to, or *pari passu* with, any of the Directors' Charge, the Administration Charge, the TPL Charge or the DIP Priority Charge, unless the Applicants also obtains the prior written consent of the Monitor, the DIP Lenders and the beneficiaries of the Directors' Charge and the Administration Charge, or further Order of this Court.

57. THIS COURT ORDERS that the Directors' Charge, the Administration Charge, the TPL Charge, the DIP Loan Agreement, the Definitive Documents and the DIP Priority Charge shall not be rendered invalid or unenforceable and the rights and remedies of the chargees entitled to the benefit of the Charges (collectively, the "**Chargees**") and/or the DIP Lenders thereunder shall not otherwise be limited or impaired in any way by (a) the pendency of these proceedings and the declarations of insolvency made herein; (b) any application(s) for bankruptcy order(s) issued pursuant to BIA, or any bankruptcy order made pursuant to such applications; (c) the filing of any assignments for the general benefit of creditors made pursuant to the BIA; (d) the provisions of any federal or provincial statutes; or (e) any negative covenants, prohibitions or other similar provisions with respect to borrowings, incurring debt or the creation of Encumbrances, contained in any existing loan documents, lease, sublease, offer to lease or other agreement (collectively, an "**Agreement**") which binds the Applicant, and notwithstanding any provision to the contrary in any Agreement:

(a) neither the creation of the Charges nor the execution, delivery, perfection, registration or performance of the Term Sheet or the Definitive Documents shall create or be deemed to constitute a breach by the Applicants of any Agreement to which they are a party;

(b) none of the Chargees shall have any liability to any Person whatsoever as a result of any breach of any Agreement caused by or resulting from the Applicants' entering

into the Term Sheet, the creation of the Charges, or the execution, delivery or performance of the Definitive Documents; and

(c) the payments made by the Applicants pursuant to this Order, the Term Sheet or the Definitive Documents, and the granting of the Charges, do not and will not constitute preferences, fraudulent conveyances, transfers at undervalue, oppressive conduct, or other challengeable or voidable transactions under any applicable law.

58. THIS COURT ORDERS that any Charge created by this Order over leases of real property in Canada shall only be a Charge in the Applicants' interest in such real property leases.

**SERVICE AND NOTICE**

59. THIS COURT ORDERS that the Monitor shall (i) without delay, publish in the Edmonton *Journal*, the Calgary *Sun* and the *Globe and Mail* a notice containing the information prescribed under the CCAA, (ii) within five days after the date of this Order, (A) make this Order publicly available in the manner prescribed under the CCAA, (B) send, in the prescribed manner, a notice to every known creditor who has a claim against the Applicants of more than $1000, and (C) prepare a list showing the names and addresses of those creditors and the estimated amounts of those claims, and make it publicly available in the prescribed manner, all in accordance with Section 23(1)(a) of the CCAA and the regulations made thereunder.

60. THIS COURT ORDERS that the E-Service Protocol of the Commercial List (the "**Protocol**") is approved and adopted by reference herein and, in this proceeding, the service of documents made in accordance with the Protocol (which can be found on the Commercial List website at http://www.ontariocourts.ca/scj/practice/practice-directions/toronto/e-service-protocol/) shall be valid and effective service. Subject to Rule 17.05 this Order shall constitute an order for substituted service pursuant to Rule 16.04 of the Rules of Civil Procedure. Subject to Rule 3.01(d) of the Rules of Civil Procedure and paragraph 21 of the Protocol, service of documents in accordance with the Protocol will be effective on transmission. This Court further orders that a Case Website shall be established in accordance with the Protocol with the following URL: http://www.cfcanada.fticonsulting.com/cashstorefinancial.

61. THIS COURT ORDERS that if the service or distribution of documents in accordance with the Protocol is not practicable, the Applicants and the Monitor are at liberty to serve or

distribute this Order, any other materials and orders in these proceedings, any notices or other correspondence, by forwarding true copies thereof by prepaid ordinary mail, courier, personal delivery or facsimile transmission to the Applicants' creditors or other interested parties at their respective addresses as last shown on the records of the Applicants and that any such service or distribution by courier, personal delivery or facsimile transmission shall be deemed to be received on the next business day following the date of forwarding thereof, or if sent by ordinary mail, on the third business day after mailing.

**GENERAL**

62. THIS COURT ORDERS that the Applicants or the Monitor may from time to time apply to this Court for advice and directions in the discharge of its powers and duties hereunder.

63. THIS COURT ORDERS that nothing in this Order shall prevent the Monitor from acting as an interim receiver, a receiver, a receiver and manager, or a trustee in bankruptcy of the Applicants, the Business or the Property.

64. THIS COURT HEREBY REQUESTS the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada, the United Kingdom, or in the United States, to give effect to this Order and to assist the Applicant, the Monitor and their respective agents in carrying out the terms of this Order. All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Applicants and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative status to the Monitor in any foreign proceeding, or to assist the Applicants and the Monitor and their respective agents in carrying out the terms of this Order.

65. THIS COURT ORDERS that each of the Applicants and the Monitor be at liberty and is hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order, and that the Monitor is authorized and empowered to act as a representative in respect of the within proceedings for the purpose of having these proceedings recognized in a jurisdiction outside Canada.

66. THIS COURT ORDERS that any interested party (including the Applicants and the Monitor) may apply to this Court to vary or amend this Order on not less than seven (7) days notice to any other party or parties likely to be affected by the order sought or upon such other notice, if any, as this Court may order; provided however, that the DIP Lenders shall be entitled to rely on this Order as issued for all advances made under the Term Sheet, the DIP Priority Charge and the Definitive Documents up to and including the date this Order may be varied or amended.

67. THIS COURT ORDERS that the come-back hearing is scheduled for April 28, 2014.

68. THIS COURT ORDERS that this Order and all of its provisions are effective as of 12:01 a.m. Eastern Standard/Daylight Time on the date of this Order.

[illegible] TORONTO
ON / [illegible] NO:
LE / [illegible] NO.

APR 17 2014

**IN THE MATTER OF the *Companies' Creditors Arrangement Act,* R.S.C. 1985, c. C-36, as amended**

Court File No: CV-14-10518-00CL

**AND IN THE MATTER OF a plan of compromise or arrangement of The Cash Store Financial Services Inc., The Cash Store Inc., TCS Cash Store Inc., Instaloans Inc., 7252331 Canada Inc., 5515433 Manitoba Inc., and 1693926 Alberta Ltd. Doing Business as "The Title Store"**

***Ontario***
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

Proceeding commenced at Toronto

**AMENDED AND RESTATED INITIAL ORDER**

OSLER, HOSKIN & HARCOURT LLP
P.O. Box 50, 1 First Canadian Place
Toronto, ON M5X 1B8

Marc Wasserman LSUC#44066M
Tel: (416) 862-4908

Jeremy Dacks LSUC# 41851R
Tel: (416) 862-4923
Fax: (416) 862-6666

Counsel to the Special Committee of the Board of Directors of Cash Store Financial Services Inc.